**The below described is SIGNED.**

**Dated: July 28, 2005**

_____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number 04-21818 |
| RICK GLENN SHERWOOD and REBECCA DEON SHERWOOD, | Chapter 7 |
| Debtors. | |
| DOUGLAS EARL CAYLOR, and CAROLANN EVA MILITANO CAYLOR, | Adversary Proceeding Number 04-2528 |
| Plaintiffs, | |
| v. | |
| RICK GLENN SHERWOOD, | |
| Defendant. | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Douglas Caylor (Mr. Caylor) and Carolann Militano Caylor (collectively the "Plaintiffs") entered into an agreement with Rick Glenn Sherwood's (Debtor) construction company to build them a house. After the Debtor and his company had drawn most of the funds from the construction loan, the Plaintiffs learned that debts the Debtor had represented were paid from the

construction loan proceeds remained unpaid, and the Plaintiffs were required to satisfy the unpaid debts from other funds.

The Plaintiffs then filed a complaint under 11 U.S.C. § 523(a)(2)(A)[1] seeking a declaration that the claim they had against the Debtor, who had guaranteed his construction company's agreement, for reimbursement of the funds they paid to satisfy the unpaid construction debts was nondischargeable. The proceeding came on for trial July 22, 2005. The Plaintiffs were present and appeared *pro se*. The Debtor, who has also appeared in the proceedings *pro se*, did not attend the trial.

The Court has now reviewed the evidence, judged the credibility of the witnesses, reviewed the exhibits, and has made an independent review of applicable case law. Now, being fully informed, the Court hereby makes and enters the following findings of fact and conclusions of law.[2]

### FINDINGS OF FACT

1.  The Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 157(a), (b)(1), (b)(2)(I), § 1334(b) and 11 U.S.C. § 523(c), and may enter a final order.

2.  The Debtor filed a petition for relief in this Court under Chapter 7 on February 6, 2004.

3.  The Debtor's schedules list the Plaintiffs as general unsecured creditors with a disputed debt for building materials of $70,000 (the "Debt").

4.  The Plaintiffs are creditors of the Debtor.

---

[1] Future references are to Title 11 of the United States Code unless otherwise noted.

[2] Findings of fact and conclusions of law are made pursuant to Fed. R. Bankr. P. 7052.

5. The Plaintiffs timely filed an adversary complaint to have the Debt declared nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code.

6. On January 31, 2005, the Court executed an order dismissing the case against the Debtor's wife Rebecca Deon Sherwood.

7. The Debtor filed an Expedited Motion to Continue the trial on July 20, 2005. The Court has considered and denied that motion.

8. On April 12, 2002, Mr. Caylor and the Debtor, acting in his capacity as business manager of Desert Springs Development, LLC (Desert Springs), entered into a Standard Form of Agreement Between Owner and Contractor (the "Agreement") in which the Debtor agreed to build a home for the Plaintiffs in Castle Valley, Utah in return for payment of $139,716 (the "Project").

9. The Debtor personally guaranteed the Agreement.

10. Under the terms of the Agreement, the Plaintiffs were to make progress payments directly to Desert Springs on or about the 25th of each month.

11. Under the terms of the Agreement, the Debtor would submit requests for progress payments, or draws, as invoices to the Plaintiffs. On each invoice, the Debtor was to indicate by line item the type of work to be completed and the amount of funds needed to complete the work. The Plaintiffs would then review and approve the invoices. The approved invoices and lien releases, executed by the parties doing the work, would then be used to substantiate the draw requests on the construction funds the Plaintiffs obtained.

12. The Plaintiffs obtained a construction loan from First National Bank, Cortez (First National) to fund the Project.

13. On May 14, 2002, Desert Springs submitted its first draw request to the Plaintiffs requesting the following amounts for a total draw of $31,380:

    a.     $3,200 for plans, permits, engineering

    b.     $3,500 for site work and excavation

    c.     $4,030 for concrete footings

    d.     $13,000 for exterior wall framing

    e.     $1,650 for exterior doors

    f.     $3,000 for plumbing (rough in)

    g.     $3,000 for heating and cooling (rough in)

14. Subsequently, the Debtor submitted to the Plaintiffs Releases of All Claims (Releases) from the following individuals and/or companies who the Debtor represented had completed work on the Project:

    a.     Dan Stenta (civil engineer) $1,840

    b.     Ty Johnson $1,650

    c.     C. Noyes Plumbing $6,000

    d.     Desert Springs $21,890

15. These Releases totaling $31,380 substantiated that all amounts listed in the first draw request had been satisfied.[3]

16. Mr. Caylor approved the first draw request and First National issued a check for $31,380 payable to Desert Springs on May 15, 2002.

---

    [3]     The Releases for each draw were submitted when the Debtor made the next draw request. For example, the Releases that supported the first draw request were given to the Plaintiffs when the Debtor submitted his second draw request.

17. On July 12, 2002 a second draw request was issued requesting payment for the following in a total amount of $34,293.69:

    a.     $2,473.95 for site work and excavation

    b.     $9,643.74 for concrete

    c.     $15,176 for exteriors walls

    d.     $7,000 for cabinets and vanities

18. The Debtor subsequently submitted to Plaintiff Releases from the following individuals and/or companies who allegedly worked on the Project:

    a.     $7,470 Ty Johnson

    b.     $4,179.63 LeGrand Johnson Construction, Inc.

    c.     $22,644.06 Desert Springs

19. These Releases totaling $34,293.69 represented that all amounts listed in the second draw request had been satisfied.

20. Mr. Caylor signed the invoice on July 18, 2002 and First National issued a check to Desert Springs on July 19, 2002 for $34,293.69.

21. On October 1, 2002, Desert Springs issued a third draw request requesting payment for the following totaling $30,923.45:

    a.     $7,213.95 for roof framing

    b.     $3,400 for roofing

    c.     $5,000 for exterior wall finish

    d.     $4,895 for exterior doors

    e.     $1,614.50 for interior doors

   f.  $1,800 for windows

   g.  $7,000 for interior walls and finish trim

22. The Debtor subsequently submitted to Plaintiff Releases from the following individuals and/or companies who allegedly worked on the Project:

   a.  Desert Springs $30,923.45

23. Mr. Caylor signed the third draw request and First National issued a check to Desert Springs on October 2, 2002 for $30,923.45.

24. On November 19, 2002, Desert Springs issued the fourth draw request for the following work and/ or materials totaling $36,793:

   a.  $3,400 for roofing

   b.  $4,148 for exterior wall finish

   c.  $3,000 for plumbing

   d.  $11,000 for hearing and cooling

   e.  $11,000 for electrical and lighting

   f.  $4,245 for interior walls and finish trim

25. The Debtor subsequently submitted Releases from the following individuals and/or companies who completed work on the project whose worked totaled $36,793:

   a.  $36,793 Desert Springs

26. This Release represented that all amounts listed in the fourth draw request had been satisfied.

27. Mr. Caylor signed the fourth draw request and First National issued a check to Desert Springs on October 2, 2002 for $36,793.

28. Also on November 19, 2002, Desert Springs issued a fifth draw request for the following work totaling $8,825.88:

    a.      $5,000 for exterior wall finish

    b.      $1,850 for painting

    c.      $1,241.68 for tile work

    d.      $341 for mirrors

    e.      $393.20 for final cleaning

29. Mr. Caylor signed the fifth draw request and First National issued a check to Desert Springs on October 2, 2002 for $6,609.86.[4]

30. By this time, the Plaintiffs were beginning to question whether the Debtor was actually paying for and doing the work as represented in the Releases. As a result, the Plaintiffs never gave the fifth draw request check to the Debtor or Desert Springs.

31. In early December 2002, the Debtor and Desert Springs discontinued all work on the Project.

32. Various mechanic's liens were recorded against the real property and one creditor sued the Plaintiffs for payment in small claims court.

33. Each time the Debtor submitted a draw request and then the Releases, he represented to the Plaintiffs that the work itemized or materials listed had been completed and/or paid for when in fact they had not.

34. The Plaintiffs relied on these representations and had checks issued to Desert Springs in payment of the amounts listed on the draw requests.

---

[4] The Court notes that the amount issued was less than the draw request amount. No specific testimony was given to explain this discrepancy.

I:\LAW\OPINIONS\Opin0455.1wpd.wpd         7

35. When the Debtor ceased work on the Project, the following work/labor and/or materials had not been completed and/or paid for as represented in the draw requests and Releases:

    a. Dirt work $1,824

    b. Concrete $2,256

    c. Trusses $4,172 and labor $1,060

    d. Stucco material $4,040 and labor $6,939

    e. Interior doors $1,025

    f. Windows $4,580 and installation $250

    g. Plumbing materials $2,533 and labor $5,600

    h. General materials $11,735 and labor $5,664

    i. General materials $5,802 and labor $3,159

    j. Framing $1,750, drywall and finish trim $8,125, and insulation $1,526

36. As a result of the Debtor's misrepresentations, the Plaintiffs had to pay other parties/persons to complete their home. The cost of doing so totaled $72,040.

From the foregoing Findings of Fact, the Court makes the following

## CONCLUSIONS OF LAW

**A.**    **Jurisdiction and Standard of Proof**

This Court has jurisdiction over the parties and subject matter of this complaint. The matter is core pursuant to 28 U.S.C. § 157(b)(2)(I) and the Court may enter a final order.

Discharge provisions will be strictly construed against the creditor and liberally construed in favor of the debtor.[5] The standard of proof for a nondischargeability action under § 523(a)(2)(A) is the preponderance of the evidence standard.[6]

**B.      Section 523(a)(2)(A).**

If a debtor obtains money, property, or an extension or renewal of credit by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition"[7] the debt is nondischargeable under § 523(a)(2)(A). To prevail on a § 523(a)(2)(A) claim, a creditor is required to prove by a preponderance of the evidence (1) a fraudulent misrepresentation, (2) that induces another to act or refrain from acting, (3) causing harm to the creditor, and (4) the creditor's justifiable reliance on the misrepresentation.[8]

**1.      Fraudulent Misrepresentation**

A fraudulent misrepresentation is made when a person "makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action."[9] The evidence has shown that Debtor made misrepresentations each time he submitted

---

[5]      *See Bellco First Fed. Cr. Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997).

[6]      *See Grogan v. Garner,* 498 U.S. 279, 291 (1990) (holding that preponderance of the evidence standard, rather than clear and convincing standard, applies to all exceptions to discharge); *see also Nelson v. Tsamasfyros (In re Tsamasfyros)*, 940 F.2d 605, 607 (10th Cir. 1991) (stating that the preponderance of the evidence standard applies to all exceptions to the dischargeability of debts set forth in § 523).

[7]      11 U.S.C. § 523(a)(2)(A).

[8]      *See Lang v. Lang (In re Lang)*, 293 B.R. 501, 514 (BAP. 10th Cir. 2003), *see also Skull Valley Bank of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 619 (Bankr. D. Utah 2002).

[9]      *Chivers*, 275 B.R. at 619. The Supreme Court has issued guidance and instruction in interpreting the terms of § 523(a)(2)(A). The terms "false pretenses," "false representation," and "actual fraud" are given the definitions developed under common law. In *Field v. Mans*, the Supreme Court explained "we will look to the concept . . . as it was understood in 1978 when that language was added to

I:\LAW\OPINIONS\Opin0455.1wpd.wpd                                  9

Releases to the Plaintiffs indicating that the work itemized on the draw requests had been either completed or paid for when in fact it had not. The Debtor made these representations for the purpose of inducing the Plaintiffs to release construction funds. The Plaintiffs have established by a preponderance of the evidence that the Debtor made false representations.

### 2. Inducement.

The second element required under § 523(a)(2)(A) is that the debtor made a misrepresentation to obtain money, property or services, or to induce the creditor into extending credit. Section 531 of the Restatement provides:

> One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.[10]

The uncontroverted evidence shows that the Debtor intended to have the Plaintiffs withdraw money from their construction fund each time he submitted a draw request to them. Plaintiffs have established inducement.

### 3. Harm.

The harm to Plaintiffs is clear. The Plaintiffs released funds to the Debtor for work that had not been done and materials for which Defendant had not paid. As a result, the Plaintiffs had to expend additional amounts beyond those allocated and disbursed to Debtor to have various liens released and to have third parties finish the Project.

---

§ 523(a)(2)(A)." 516 U.S. 59, 70 (1995). Therefore, in interpreting the language of § 523(a)(2)(A), this Court must be guided by the Second Restatement of Torts.

[10] RESTATEMENT (SECOND) OF TORTS § 531 (1976).

The measure of damages for fraudulent misrepresentations is found in § 549 of the Restatement.[11] This section allows recovery of damages of

(a) the difference between the value of what [the plaintiff] has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.[12]

Under the terms of the Agreement, the Plaintiffs promised to pay the Debtor and Desert Springs $139,716 in exchange for a substantially completed home. When the Debtor walked away from the Project in December 2002 he had received $133,390.14 but the Plaintiffs did not receive a substantially completed home. To the contrary, many of the contractors who provided labor and/or materials had not been paid. In two cases, mechanic's liens had been recorded against the real property. The Plaintiffs had to pay to have these liens released, and had to pay others to finish the Project at a total cost to the Plaintiffs of $72,040.

### 4. Justifiable Reliance.

The final element under § 523(a)(2)(A) is justifiable reliance.[13] Justifiable reliance does not require the creditor prove he acted consistent with ordinary care and prudence. Instead, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."[14] A creditor is only required to make an investigation beyond the representations given where "under the circumstances, the facts should be apparent to one of his

---

[11] *See* RESTATEMENT (SECOND) OF TORTS § 549 (1976).

[12] *Id.* at § 549(1)(a) - (b).

[13] *See Field,* 516 U.S. at 74-75, *see also* RESTATEMENT (SECOND) OF TORTS § 525 (1976).

[14] *Id.* at 70-71 (citing RESTATEMENT (SECOND) OF TORTS § 545A cmt. b (1976)).

knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived."[15]

The Plaintiffs justifiably relied on the Defendant's misrepresentations. The Debtor seemed to be complying with the terms of the Agreement each time he submitted a draw request. The Debtor submitted Releases from others who allegedly had performed work on the Project indicating that they had been paid in full for work performed. The Debtor even purchased some of the materials listed on the itemized draw requests and performed some of the tasks for which he requested compensation. When the Plaintiffs discovered that the Debtor may not have been actually doing all of the work he had been receiving compensation for, they stopped payment on the draw request check and began to investigate. The evidence shows that the Plaintiffs' reliance on the Debtor's misrepresentations was justifiable.

## CONCLUSION

Based on the foregoing, the Court finds that the Plaintiffs have established all the elements under § 523(a)(2)(A) by a preponderance of the evidence. The Debtor made fraudulent misrepresentations in the invoices submitted to the Plaintiffs and by filing fraudulent Releases. The Plaintiffs justifiably relied on the Debtor's representations, and the Plaintiffs were harmed as a result. Accordingly, the Court finds that the Debt owed to the Plaintiffs of $72,040 is non-dischargeable under § 523(a)(2)(A).

A separate judgment will be issued.

---

[15]   *Id.* at 71.

–ooo0ooo–

## CERTIFICATE OF SERVICE

This hereby certifies that the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW** was mailed by placing a copy in the United States mail to the following individuals this by the Bankruptcy Noticing Center.

Douglas Earl Caylor
PO Box 1391
Moab, UT 84532

Carolann Eva Militano Caylor
122 Pace Lane
HC 64 Box 1712
Castle Valley, UT 84532-9609

Rick Glenn Sherwood
PO Box 1391
Moab, UT 84532